**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**EDWARD WOFSY,**

    **Plaintiff,**

v.                                                                                   Case No.  8:07-cv-98-T-30TGW

**PALM SHORES RETIREMENT**
**COMMUNITY,**

    **Defendant.**
_____/

## **ORDER**

THIS CAUSE comes before the Court upon Plaintiff Edward Wofsy's (**"Wofsy"**) Motion for Summary Judgment (Dkt. 8) and Defendant Palm Shores Retirement Community, Inc. d/b/a Westminster Palms' (**"Palm Shores"**) Response in opposition to the same (Dkt. 11). The Court, having considered the motion, response, memoranda, supporting documentation, and being otherwise advised in the premises, determines that Wofsy's Motion should be denied.

### **Background.**

Palm Shores, a not-for-profit organization, provides independent living, assisted living, and skilled nursing services to its residents.  On or about August 22, 2002, Wofsy was hired as a Driver in Palm Shores' Resident Services Department.  Wofsy's duties included driving residents to doctor appointments and recreational outings.  While Palm Shores employed more than one Driver, only one Driver was on duty at any given time.

In October of 2004, Wofsy provided Palm Shores with a handwritten letter from his doctor indicating Wofsy had "substantial limitations" due to an asthma condition, and that he "may need a reasonable accommodation at times to help him with his breathing condition." On or about October 18, 2004, Wofsy's supervisor, Shelley Gutsche-Streetman (**"Streetman"**), and Sharron Bader (the HR Director for Palm Shores, hereinafter **"Bader"**), met with him to discuss the letter and request more detailed information. Specifically, Streetman and Bader asked Wofsy to provide them with specific examples of his limitations (i.e., time or distance restrictions on his driving, restrictions on his ability to move or bend, etc.). On or about October 21, 2004, Wofsy provided Palm Shores with a second letter from his doctor recommending his driving be limited to the St. Petersburg region.[1] The letter further stated that his "asthma condition is severe and it is to his best interest and the interest of other drivers that he be limited to an area that is familiar to him." Neither letter addressed whether Wofsy's condition could be corrected with medication. Likewise, neither letter detailed the nature and extent of Wofsy's functional limitations or work restrictions.

From October of 2004 through August of 2005, Wofsy continued his duties as Driver without incident. On or about August 10, 2005, Streetman advised Wofsy that Palm Shores had purchased a new bus. Due to the size and the weight of the new bus, a Commercial Drivers License (**"CDL"**) was required to operate it. Streetman advised Wofsy that, in order to keep his position as Driver, he would need to obtain a CDL license. Further, Streetman indicated that in order to maximize the use of the new bus, Wofsy would need to be available

---

[1] Both letters were signed by Elizabeth Stoll, D.O., of The Renaissance Medical Group, P.A.

on a full-time basis for flexible hours, including nights and weekends, and would also be required to drive residents on longer trips (i.e., to Orlando or Ft. Myers).

According to Streetman, Wofsy indicated he did not want to drive at night, work weekends, or obtain a CDL. Wofsy stated he was hired to drive residents to doctor appointments and that he would prefer to keep it that way. Streetman explained that she would need to hire a CDL driver to operate the new bus, and that she could not guarantee how this may change his position or hours. Wofsy offered to work the front desk to maintain his full-time hours and benefits.

On or about August 26, 2005, Streetman claims she presented Wofsy with a letter and medical questionnaire to provide to his physician. The letter and questionnaire sought to clarify Wofsy's physical limitations and work restrictions due to his asthma condition. Streetman claims Wofsy refused to return the questionnaire, stating that he did not think it was necessary and that he wanted to do his "old job."

On or about October 1, 2005, Palm Shores transitioned Wofsy from full-time to part-time status. Palm Shores claims this change was made because Wofsy refused to obtain his CDL and refused to cooperate in defining his work restrictions. Wofsy continued to perform limited duties during this time, including short trips and errands.

On or about November 18, 2005, Palm Shores again offered Wofsy the full-time CDL driver position, provided he comply with the new requirements. In response, Wofsy returned the offer letter from Palm Shores with a handwritten note purporting to accept the offer with restrictions. The note indicated that he accepted the position as long as it was "limited to the

St. Pete area; due to my disability (breathing) with substantial limitations." Wofsy claimed his "reasonable accommodation request" would cause no undue hardship to Palm Shores, and further requested to continue his "same job duties performed for years."

On or about November 21, 2005, Palm Shores notified Wofsy that he would be maintained on an "as needed" basis as he was not complying with the requirements of the Driver position. Palm Shores claims that Wofsy never obtained a CDL. Subsequent to Wofsy's receipt of the notification, Palm Shores claims that every time he was contacted to work, he would say he was unavailable or that he could not drive the new bus because he did not have a CDL.

Wofsy claims that the November 21, 2005 notification was a material adverse change in his employment resulting from Palm Shores' discriminatory actions. In an affidavit filed with the Court on April 2, 2007 (Dkt. 14), Wofsy claimed to have a ten (10) year history of asthma. According to Wofsy, Palm Shores was aware of his condition during the three (3) year course of his employment. He further claimed that common triggers of his asthma attacks were: tobacco smoke, perfumes, air pollution, and chemicals/allergens. Exercise, emotional stress or excitement, and extreme changes in weather were also alleged triggers for his asthma attacks. Wofsy claimed that "over ten (10) years of my medications have only reduced the number of attacks" to approximately fifteen (15) per week.

Wofsy's affidavit further asserts that he delivered a letter dated April 16, 2002,[2] to Palm Shores from a Dr. Robert J. Hover, D.O. Dr. Hover's letter states that Wofsy is impaired by

---

[2] While Wofsy's affidavit does not clearly indicate when Wofsy provided this letter to Palm Shores, Wofsy appears to claim he provided it to the company at the onset of his employment.

asthma, which "limits his ability in performing the major life activity of breathing." Hover claims Wofsy has been an asthma sufferer since at least 1993, that he takes medications in an attempt to control his asthma, and that he can "perform his job duties on a normal basis, though there may be a period of time a reasonable accommodation may be needed because of his asthma, i.e. days off from work, a modified work schedule." The letter from Dr. Hover did not specifically address any additional physical or functional limitations.

In an addendum to his affidavit filed on April 10, 2007 (Dkt. 10), Wofsy provided a letter from United Healthcare dated October 2004 in an effort to establish Palm Shores was aware of his asthma condition. Notably, the letter was addressed to "Enrollee." There is no record evidence that the letter was provided to Palm Shores. Nevertheless, Wofsy also filed a sworn statement from Nanci G. Rhea, who was the Resident Services Director of Palm Shores from 1994-2004. Rhea's statement claims that Wofsy was "cooperative and flexible, working evening and weekend hours when requested." The statement further indicates that Rhea and the company were aware of his "breathing disability," that the company requested medical documentation to support his condition, that an accommodation was granted and put in his employee file, that his condition did not affect his daily job performance, and that Wofsy agreed to obtain a CDL to continue his normal driving schedule.

## Discussion.

### I. Summary Judgment Standard.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248;

Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II. Legal Analysis.

Wofsy's Complaint asserts claims under the Americans with Disabilities Act (the **"ADA"**). Wofsy claims that Palm Shores discriminated against him because of his asthma condition, which he claims limits the major life activity of breathing. In considering a substantially similar claim brought under the ADA by Wofsy against a prior employer,[3] the Eleventh Circuit set forth the following standard:

> To prevail on a claim under the ADA, the plaintiff must show that (1) he has a disability; (2) he is a "qualified individual" for the position in question; and (3) the defendant discriminated against him on the basis of his disability. Taylor v. Food World, Inc., 133 F.3d 1419, 1422 (11th Cir. 1998). The ADA places the burden on the employee to establish a prima facie case of disability discrimination. Holbrook v. City of Alpharetta, 112 F.3d 1522, 1526 (11th Cir. 1997). Once the plaintiff establishes a prima facie case of discrimination, the employer has the burden to articulate legitimate, nondiscriminatory reasons for its employment decision. Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). If the employer meets this burden, the plaintiff must produce evidence to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. Id.
>
> "Disability" means (1) "a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual;" (2) "a record of [the] impairment;" or (3) "being regarded as having . . . an impairment." 42

---

[3] The Eleventh Circuit entered judgment against Wofsy and in favor of his prior employer on a similar ADA claim in Wofsy v. St. Petersburg Kennel Club, Case No. 02-11872. See 48 Fed.Appx. 742 (11th Cir. 2002) (Table). The discussion referenced herein was taken from the Eleventh Circuit's unpublished opinion in that case. Although unpublished opinions are not binding precedent, they are persuasive authority. The Eleventh Circuit's opinion is particularly relevant to the instant action, as it involved the same plaintiff asserting a similar claim against his previous employer.

U.S.C. § 12102(2). A "physical or mental impairment" is any mental or psychological disorder. 29 C.F.R § 1630.2(h)(1)-(2). Working is considered a major life activity. Id. § 1630.2(i). In order for a condition to limit the ability to work substantially, it must "significantly restrict[] . . . the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." Id. § 1630.2(j)(3)(i). An impairment does not substantially limit the ability to work merely because it prevents a person from doing a specialized job or a narrow range of jobs. Id. § 1630.2(j)(3). Nor does the inability to perform a singe, particular job constitute a substantial limitation in the major life activity of working. Id. § 1630.2(j)(3)(i). An employee must show that his employer either had notice of a disability or perceived the employee as suffering from a disability. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999) . . . In order to be the cause of a substantial limitation, the disability must make the individual

> (i) [u]nable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.

29 C.F.R. § 1630.2(j)(1)(i)-(ii). When considering whether an individual is substantially limited in a major life activity, the following factors should be considered: (i)[t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment, and (iii) [t]he permanent or long term impact of or resulting from the impairment." Id. § 1630.2(j)(2)(i)-(iii).

Furthermore, asthma and similar conditions which are episodic in nature and can be treated or controlled with readily available medication generally do not constitute "disabilities" as defined under the ADA. Ventura v. City of Independence, 1997 WL 94688 *2 (6th Cir. 1997) (holding employee failed to demonstrate his asthma was a disability under the ADA where employee was able to perform a wide range of activities and hold several different types of jobs); White v. Honda of America Mfg., Inc., 241 F. Supp. 2d 852, 856-7 (S.D. Ohio 2003) (noting that

"[n]umerous courts have found that individuals who are able to treat their asthma such that they are able to engage normally in physical exertion without symptoms are not substantially limited in any major life activity," and holding employee's episodic asthma was not an impairment that limited the major life activity of breathing where she could perform normal life activities like driving, pumping gas, walking, exercising, smoking, and going to restaurants); Sutton v. United Air Lines, Inc., 527 U.S. 471, 486 (1999) (concluding that Congress did not intend for those whose impairments "are largely corrected by medication or other devices" to be considered "disabled" within the meaning of the ADA.).

Wofsy has failed to establish that his asthma condition substantially limited the life activities of breathing and/or working. Both Dr. Hover's letter and Nanci Rhea's statement indicate that Wofsy could perform his job duties on a regular basis. Although Dr. Stoll's letter recommended that Wofsy's driving be limited to the St. Petersburg area (or an area that is familiar to him), it does not specify how and to what extent Wofsy's asthma condition limits his ability to perform his job. Wofsy refused to have his physician complete the medical questionnaire provided by Palm Shores in an effort to clarify specific physical limitations and work restrictions. Wofsy has further failed to produce medical evidence that (i) his asthma condition was not episodic in nature, and (ii) his condition could not be treated or controlled with readily available medication. Accordingly, Wofsy has failed to establish that his asthma condition is a "disability" as defined under the ADA.

Wofsy has also failed to establish that he was discriminated against because of his asthma condition. It is clear that the requirements of the Driver position changed upon Palm

Shore's purchase of the new bus. The record reflects that Wofsy was relieved of his full-time Driver position because he refused to obtain a CDL license, did not want to work evenings or weekends, and did not want to drive longer distances. While Dr. Stoll's letter recommended that Wofsy's driving be confined to the St. Petersburg area, it did not provide a sufficient explanation for this limitation (i.e., why Wofsy could drive within St. Petersburg but not to Orlando, Ft. Myers, or other nearby cities). Although Wofsy was given the opportunity to clarify these restrictions, he refused to do so.

The Court concludes that Wofsy has failed to establish (i) that he is disabled under the ADA, and (ii) that he was discriminated against on the basis of his asthma condition. Thus, the Court cannot grant summary judgment in his favor.

It is therefore ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment (Dkt. 8) is **DENIED**.

**DONE** and **ORDERED** in Tampa, Florida on September 18, 2007.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2007\07-cv-98.msj.frm