**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**EDWARD WOFSY,**

    **Plaintiff,**

v.   Case No.  8:07-cv-98-T-30TGW

**PALM SHORES RETIREMENT**
**COMMUNITY,**

    **Defendant.**
_____/

## **ORDER**

THIS CAUSE comes before the Court upon Plaintiff Edward Wofsy's (hereinafter **"Plaintiff"** or **"Wofsy"**) Motion for Partial Summary Judgment (Dkt. 38), Defendant Palm Shores Retirement Community, Inc. d/b/a Westminster Palms' (hereinafter **"Defendant"** or **"Westminster Palms")** Memorandum in opposition to the same (Dkt. 39), Defendant's Motion for Summary Judgment (Dkt. 44), Plaintiff's Memorandum in opposition to the same and/or Motion for Reconsideration (Dkt. 45 and 46), Defendant's Motion and Memorandum to Strike (Dkt. 47), Plaintiff's Objection in opposition to the same (Dkt. 48), Plaintiff's Motion for Judgment as a Matter of Law (Dkt. 50), and Plaintiff's Motion to file a counter offer (Dkt 51).  The Court, having considered the motions, memoranda, and supporting documentation, and being otherwise fully advised in the premises, determines that summary judgment should be granted in favor of Defendant as to all of Plaintiff's claims.

**Background.**

Westminster Palms, a not-for-profit organization, provides independent living, assisted living, and skilled nursing services to its residents. On or about August 22, 2002, Wofsy was hired as a Driver at a retirement home known as Palm Shores Retirement Center. The retirement center was owned by an entity known as American Baptist Homes of the Midwest, Inc. d/b/a Palm Shores Retirement Center, which was acquired by Westminster Palms in or about March of 2003. Many of the Palm Shores employees, including Wofsy, were hired by Westminster Palms at the time of the acquisition. As a Driver for Westminster Palms, Wofsy's duties included driving residents to doctor appointments and recreational outings. While Westminster Palms employed more than one Driver, only one Driver was on duty at any given time.

In October of 2004, Wofsy provided Westminster Palms with a handwritten letter from his doctor indicating Wofsy had "substantial limitations" due to an asthma condition, and that he "may need a reasonable accommodation at times to help him with his breathing condition." According to Westminster Palms, on or about October 18, 2004, Wofsy's supervisor, Shelley Gutsche-Streetman (**"Streetman"**), and Sharron Bader (the HR Director for Westminster Palms, hereinafter **"Bader"**), met with him to discuss the letter and request more detailed information. Specifically, Streetman and Bader asked Wofsy to provide them with specific examples of his limitations (i.e., time or distance restrictions on his driving, restrictions on his ability to move or bend, etc.). On or about October 21, 2004, Wofsy provided Westminster Palms with a second letter from his doctor recommending his driving

be limited to the St. Petersburg region.[1] The letter further stated that his "asthma condition is severe and it is to his best interest and the interest of other drivers that he be limited to an area that is familiar to him." Neither letter addressed whether Wofsy's condition could be corrected with medication. Likewise, neither letter detailed the nature and extent of Wofsy's functional limitations or work restrictions.

From October of 2004 through August of 2005, Wofsy continued his duties as Driver. On or about August 10, 2005, Streetman advised Wofsy that Westminster Palms had purchased a new bus. Due to the size and the weight of the new bus, a Commercial Drivers License (**"CDL"**) was required to operate it. Streetman advised Wofsy that, in order to keep his position as Driver, he would need to obtain a CDL. Further, Streetman indicated that in order to maximize the use of the new bus, Wofsy would need to be available on a full-time basis for flexible hours, including nights and weekends, and would also be required to drive residents on longer trips (i.e., to Orlando or Ft. Myers).

According to Streetman, Wofsy indicated he did not want to drive at night, work weekends, or obtain a CDL. Streetman claims to have explained to Wofsy that she would need to hire a CDL driver to operate the new bus, and that she could not guarantee how this may change his position or hours. She further claims Wofsy stated he was hired to drive residents to doctor appointments and that he would prefer to keep it that way, and also that

---

[1] Both letters were signed by Elizabeth Stoll, D.O., of The Renaissance Medical Group, P.A.

he offered to work the front desk to maintain his full-time hours and benefits. Wofsy denies Streetman's claims in part, stating in an Affidavit that

> I did accept the offer to become CDL license not to take on the over driver's position too. However, contrary to Palm Shores statements, I was always willing to help and I was flexible.

Wofsy claims he accepted the opportunity to get a CDL license, although he acknowledges he never obtained one.

On or about August 26, 2005, Streetman claims she presented Wofsy with a letter and medical questionnaire to provide to his physician. The letter and questionnaire sought to clarify Wofsy's physical limitations and work restrictions due to his asthma condition. Streetman claims Wofsy refused to return the questionnaire, stating that he did not think it was necessary and that he wanted to do his "old job."[2]

Westminster Palms claims that on or about October 1, 2005, Wofsy's employment was changed from full-time to part-time status. Westminster Palms claims this change was made because Wofsy refused to obtain his CDL and refused to cooperate in defining his work restrictions. According to Westminster Palms, Wofsy continued to perform limited duties during this time, including short trips and errands.

On or about November 18, 2005, Westminster Palms claims it again offered Wofsy the full-time CDL driver position, provided he comply with the new requirements. In response, Wofsy returned the offer letter from Westminster Palms with a handwritten note

---

[2] Wofsy claims that "[n]o mention of any additional medical documents were ever asked from Wofsy." While somewhat unclear, the Court will assume for purposes of this motion that Wofsy denies being presented with the medical questionnaire.

purporting to accept the offer with restrictions. The note indicated he accepted the position as long as it was "limited to the St. Pete area; due to my disability (breathing) with substantial limitations." Wofsy claimed his "reasonable accommodation request" would cause no undue hardship to Westminster Palms, and further requested to continue his "same job duties performed for years."

On or about November 21, 2005, Westminster Palms notified Wofsy that he would be maintained on an "as needed" basis as he was not complying with the requirements of the Driver position. Subsequent to Wofsy's receipt of the notification, Westminster Palms claims that every time he was contacted to work, he would say he was unavailable or that he could not drive the new bus because he did not have a CDL. Wofsy claims that he was not contacted to work following his receipt of the notification.

In an Affidavit filed with the Court on April 2, 2007 (Dkt. 14), Wofsy claims to have a ten (10) year history of asthma. According to Wofsy, Westminster Palms was aware of his condition during the three year course of his employment. He further claims that common triggers of his asthma attacks are: tobacco smoke, perfumes, air pollution, and chemicals/allergens. Exercise, emotional stress or excitement, and extreme changes in weather are also alleged triggers for his asthma attacks. Wofsy claims that "over ten (10) years of my medications have only reduced the number of attacks" to approximately fifteen (15) per week.

Wofsy's Affidavit further asserts he delivered a letter dated April 16, 2002,[3] to Westminster Palms from a Dr. Robert J. Hover, D.O. Dr. Hover's letter stated that Wofsy was impaired by asthma, which limited "his ability in performing the major life activity of breathing." Dr. Hover claimed Wofsy had been an asthma sufferer since at least 1993, that he took medications in an attempt to control his asthma, and that he could "perform his job duties on a normal basis, though there may be a period of time a reasonable accommodation may be needed because of his asthma, i.e. days off from work, a modified work schedule." The letter from Dr. Hover did not specifically address any additional physical or functional limitations.

In an addendum to his Affidavit filed on April 10, 2007 (Dkt. 10), Wofsy provided a letter from United Healthcare dated October 2004 in an effort to establish Westminster Palms was aware of his asthma condition. Notably, the letter was addressed to "Enrollee" and not to Westminster Palms. There is no record evidence that this letter was provided to Westminster Palms.

Nevertheless, Wofsy also filed a sworn statement from Nanci G. Rhea, who was the Resident Services Director of Westminster Palms from 1994-2004. Rhea's statement claims that Wofsy was "cooperative and flexible, working evening and weekend hours when requested." The statement further indicates that Rhea and the company were aware of his

---

[3] While Wofsy's affidavit does not clearly indicate when Wofsy provided this letter to Westminster Palms, Wofsy appears to claim he provided it to the company at the onset of his employment. Wofsy's prior supervisor, Nancy Rhea, has testified that Westminster Palms was aware of his asthma condition throughout the course of his employment.

"breathing disability," that the company requested medical documentation to support his condition, that an accommodation was granted and put in his employee file, that his condition did not affect his daily job performance, and that Wofsy agreed to obtain a CDL license to continue his normal driving schedule.

Wofsy filed the instant lawsuit on January 16, 2007, asserting claims under the Americans with Disabilities Act (the **"ADA"**). He claims the November 21, 2005 notification was a material adverse change in his employment resulting from Westminster Palms' discriminatory actions, and also claims he was retaliated against for requesting a reasonable accommodation. On September 18, 2007, the Court denied Wofsy's Motion for Summary Judgment because Wofsy failed to establish (i) that he had a disability pursuant to the ADA, and/or (ii) that he was discriminated against on the basis of his asthma condition. Wofsy has moved for reconsideration of the September 18, 2007 Order, and/or for partial summary judgment as to his retaliation claim. Westminster Palms has now moved for summary judgment as to all of Wofsy's claims.

Since the September 18, 2007 Order, both parties have filed additional documents in support of the instant motions. Westminster Palms has filed medical records obtained from the Renaissance Medical Group, P.A.[4], which include the following information:

(I)   In a letter/report dated January 9, 2003, B. Lynn Feaster, III, M.D., noted Wofsy was referred to him by Dr. Stoll for an asthma evaluation. Dr. Feaster reported Wofsy suffered from a long history of asthma, dating back to 1984, with intermittent attacks. He also reported Wofsy had used asthma medications

---

[4] See Exhibit 5 to Defendant's Motion for Summary Judgment (Dkt. 44-6).

    with good relief, that his normal activity level was quite good, and that he was "not limited in daily routines from his asthma."

(ii) In an Office Note dated January 27, 2003, Dr. Feaster assessed Wofsy as having "[m]ild persistent asthma with mild exacerbation," with a reported history of the same. The note referenced Wofsy's visit to a hospital emergency room on January 16, 2005, for reported chest pains.

(iii) On August 4, 2004, Dr. Stoll noted Wofsy had "no problems and was doing well on meds," but did report "rare wheezing," and occasional anxiety.

(iv) In a January 24, 2005 letter addressed to Dr. Stoll, Dr. Brien E. Pierpont, M.D., noted Wofsy felt his asthma was "under fairly good control" following a recent visit to a hospital emergency department.

Wofsy has also provided additional evidence in support of his position. In an Affidavit and additional sworn statement, Nancy Rhea stated that (i) at all times Westminster Palms had at least two other drivers available to transport residents, (ii) Westminster Palms was aware of Wofsy's asthma condition, (iii) during the course of his employment, Wofsy was hospitalized twice with breathing difficulties, (iv) Westminster Palms continued to utilize the old bus until at least November of 2006, (v) both she (as Wofsy's supervisor) and Joyce Frey (as Administrator of Westminster Palms) knew and accepted Wofsy's medical condition, (vi) Streetman and Bader were also aware of Wofsy's condition, (vii) his condition was made known from the onset of his employment, and his original accommodation request to be limited to the St. Petersburg area was granted, (viii) at no time during her three years as his immediate supervisor were additional medical documents requested of Wofsy to support his breathing disability, and (ix) Westminster Palms employed a new driver in September of 2005, immediately preceding Wofsy's effective termination. During her deposition, Rhea

testified that, from her observation, Wofsy's asthma was episodic in nature and was typically well controlled with medication. Rhea also testified that his asthma could be triggered by apprehension, and that

> [i]t was under control when I was attending all the events because I was like his backup. And if any – if he would get apprehensive about something or if something would start to go wrong with the bus, I could calm the situation and he knew I was there to take over as the driver so he would stay reasonably calm.

(Deposition of Nancy Rhea, September 29, 2007, at pages 34-35). Wofsy's apprehension was also described in the Affidavit of Wofsy's wife, Lola Wofsy, who stated the couple has not been away on vacation for over ten years because Wofsy feels more secure knowing he is in a familiar environment with his doctors and hospitals nearby.[5] Other than the notes and records referenced herein, Wofsy has not provided the Court with additional testimony from a medical doctor or expert witness regarding his asthma condition.

## Discussion.

### I.     Summary Judgment Standard.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322

---

[5]Westminster Palms has moved to strike a number of documents attached to Wofsy's Memorandum in opposition to the motion for summary judgment (Dkt. 45). Included are the affidavits of Nancy Rhea and Lola Wofsy referenced herein. As the Court is granting summary judgment in favor of Westminster Palms, it need not rule on the Motion to Strike and thus will deny it as moot.

(1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a

conflict in substantial evidence to pose a jury question. <u>Verbraeken v. Westinghouse Elec. Corp.</u>, 881 F.2d 1041, 1045 (11th Cir. 1989).

**II.   Legal Analysis.**

   **A.   Discrimination Claim**.

Wofsy claims that Palm Shores discriminated against him because of his asthma condition, which he claims limits the major life activity of breathing. In considering a substantially similar claim brought under the ADA by Wofsy against a prior employer,[6] the Eleventh Circuit set forth the following standard:

> To prevail on a claim under the ADA, the plaintiff must show that (1) he has a disability; (2) he is a "qualified individual" for the position in question; and (3) the defendant discriminated against him on the basis of his disability. <u>Taylor v. Food World, Inc.</u>, 133 F.3d 1419, 1422 (11th Cir. 1998). The ADA places the burden on the employee to establish a prima facie case of disability discrimination. <u>Holbrook v. City of Alpharetta</u>, 112 F.3d 1522, 1526 (11th Cir. 1997). Once the plaintiff establishes a prima facie case of discrimination, the employer has the burden to articulate legitimate, nondiscriminatory reasons for its employment decision. <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997). If the employer meets this burden, the plaintiff must produce evidence to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. <u>Id.</u>
>
> "Disability" means (1) "a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual;" (2) "a record of [the] impairment;" or (3) "being regarded as having . . . an impairment." 42 U.S.C. § 12102(2). A "physical or mental impairment" is any

---

[6] The Eleventh Circuit affirmed the district court's entry of summary judgment against Wofsy and in favor of his prior employer on a similar ADA claim in <u>Wofsy v. St. Petersburg Kennel Club</u>, Case No. 02-11872. <u>See</u> 48 Fed.Appx. 742 (11th Cir. 2002) (Table). The discussion referenced herein was taken from the Eleventh Circuit's unpublished opinion in that case. Although unpublished opinions are not binding precedent, they are persuasive authority. The Eleventh Circuit's opinion is particularly relevant to the instant action, as it involved the same plaintiff asserting a similar claim against his previous employer.

mental or psychological disorder. 29 C.F.R § 1630.2(h)(1)-(2). Working is considered a major life activity. Id. § 1630.2(I). In order for a condition to limit the ability to work substantially, it must "significantly restrict[] . . . the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." Id. § 1630.2(j)(3)(I). An impairment does not substantially limit the ability to work merely because it prevents a person from doing a specialized job or a narrow range of jobs. Id. § 1630.2(j)(3). Nor does the inability to perform a singe, particular job constitute a substantial limitation in the major life activity of working. Id. § 1630.2(j)(3)(I). An employee must show that his employer either had notice of a disability or perceived the employee as suffering from a disability. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999) . . . In order to be the cause of a substantial limitation, the disability must make the individual

> (i) [u]nable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.

29 C.F.R. § 1630.2(j)(1)(I)-(ii). When considering whether an individual is substantially limited in a major life activity, the following factors should be considered: (i)[t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment, and (iii) [t]he permanent or long term impact of or resulting from the impairment." Id. § 1630.2(j)(2)(i)-(iii).

Furthermore, asthma and similar conditions which are episodic in nature and can be treated or controlled with readily available medication generally do not constitute "disabilities" as defined under the ADA. Ventura v. City of Independence, 1997 WL 94688 *2 (6th Cir. 1997) (holding employee failed to demonstrate his asthma was a disability under the ADA where employee was able to perform a wide range of activities and hold several different types of jobs); White v. Honda of America Mfg., Inc., 241 F. Supp. 2d 852, 856-7 (S.D. Ohio 2003)

(noting that "[n]umerous courts have found that individuals who are able to treat their asthma such that they are able to engage normally in physical exertion without symptoms are not substantially limited in any major life activity," and holding employee's episodic asthma was not an impairment that limited the major life activity of breathing where she could perform normal life activities like driving, pumping gas, walking, exercising, smoking, and going to restaurants); Sutton v. United Air Lines, Inc., 527 U.S. 471, 486 (1999) (concluding that Congress did not intend for those whose impairments "are largely corrected by medication or other devices" to be considered "disabled" within the meaning of the ADA.).

Wofsy has again failed to establish that his asthma condition substantially limited any major life activity. Both Dr. Hover's letter and Nanci Rhea's statements indicate that Wofsy could perform his job duties on a regular basis. Although Dr. Stoll's letter recommended that Wofsy's driving be limited to the St. Petersburg area (or an area that is familiar to him), it does not specify how and to what extent Wofsy's asthma condition limits his ability to perform his job. Dr. Feaster, to whom Dr. Stoll referred Wofsy for an asthma evaluation, reported Wofsy was "not limited in daily routines from his asthma" and used asthma medications with good relief. Moreover, Wofsy has failed to produce medical evidence that (i) his asthma condition was not episodic in nature, and (ii) his condition could not be treated or controlled with readily available medication. Accordingly, Wofsy has failed to establish that his asthma condition is a "disability" as defined under the ADA.

Even assuming Wofsy had a disability as defined under the ADA, he has not shown that he was subjected to discrimination because of that disability. In order to utilize the new

bus, Westminster Palms decided to modify the requirements of its Driver position. The new position required a CDL, a more flexible schedule, and travel to locations outside of the St. Petersburg area. Notably, Westminster Palms offered the new Driver position to Wofsy on at least two occasions. While there are disputed issues of fact as to whether Wofsy agreed to obtain a CDL or work a more flexible schedule, it is undisputed that Wofsy never actually obtained a CDL. Further, it is undisputed that Wofsy refused to travel outside the St. Petersburg area.

Without a CDL, and absent a willingness to travel outside the St. Petersburg area, Wofsy did not meet the requirements of the new position. Wofsy could have requested a reasonable accommodation in an attempt to comport with the new requirements. For example, Wofsy could have requested time off upon inflammation of his asthma condition, or for another employee to accompany him on longer trips as was done in the past. Instead, Wofsy demanded an accommodation that would have fundamentally altered the new job requirements by limiting his travel to the St. Petersburg area.[7] Wofsy never offered to perform the described job with accommodations. And, no reasonable juror could conclude that Westminster Palms' rejection of his request was motivated by discriminatory intent. Thus, summary judgment in favor of Westminster Palms is appropriate as to Plaintiff's discrimination claim.

---

[7]Wofsy also argues that the safety of the residents would be put at risk if he was required to drive longer distances. As argued by Wofsy, using good "common sense," the residents would be put in danger if he suffered an asthma attack while driving on the interstate. However, Wofsy has failed to demonstrate that such an attack and/or impending danger was less likely to occur within the St. Petersburg area.

**B.     Retaliation Claim.**

Wofsy claims the only reason Westminster Palms changed his employment status on November 21, 2005 (and effectively terminated his employment) was in retaliation for his request for a reasonable accommodation. To establish a prima facie case of retaliation under the ADA, a plaintiff must show: "(1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir.1997).

If a prima facie case is shown, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reasons for its actions that negate the inference of retaliation." Id. Should the defendant carry this burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981). "[A]lthough intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing, 530 U.S. 133, 142-43, 120 S.Ct. 2097, 2106 (2000).

Utilizing that analytical framework, the Court first examines whether Wofsy has established a prima facie case of retaliation. At issue is the third element, whether Wofsy has established a causal link between the protected activity (requesting the accommodation) and the adverse action (his effective termination). The record reflects that Westminster Palms

made a business decision to purchase a new bus and modify the requirements of its Driver position. Wofsy was offered the new Driver position on at least two occasions, the last of which was by letter dated November 18, 2005. That letter informed Wofsy that he was being offered the full time driver position, and that should he refuse, he would be placed on PRN pool effective immediately. Wofsy responded in writing, purporting to accept the position so long as his driving was limited to the St. Pete area. Wofsy argues this was a request for a reasonable accommodation. By letter dated November 21, 2005, only three days after the date of the offer letter, Westminster Palms construed his response to be a refusal of the offer and placed him on PRN status (and according to Wofsy, effectively terminating his position).

In the Eleventh Circuit, the burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). In Clark County School District v. Breeden, 532 U.S. 268, 121 S.Ct. 1508 (2001), the United States Supreme Court recognized that

> cases that accept mere temporal proximity between an employer's knowledge of a protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close."

The Court in Clark, also stated that

> [e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatever of causality.

532 U.S. at 272, 121 S.Ct. at 1511.

Wofsy argues, and the Court agrees, that the November 21, 2005 letter was very close in temporal proximity to Wofsy's purported request for a reasonable accommodation. Nevertheless, Westminster Palms made clear to Wofsy that his refusal to accept the new Driver position would result in him being transferred to PRN status. Wofsy was notified such action would result before he requested the accommodation.[8] Because he would not agree to accept the position and drive outside the St. Petersburg area, Wofsy was transferred to PRN status. As Wofsy was offered the position and notified that his refusal would result in the action taken, the Court concludes the close temporal proximity of Wofsy's request and his effective termination are not evidence of causality. Other than the close temporal proximity, Wofsy has offered no evidence of a causal link. Thus, he has failed to establish a prima facie case of retaliation.[9]

Even if Wofsy had established a prima facie case, Westminster Palms has provided evidence showing a legitimate, nondiscriminatory reason for its change to Plaintiff's employment status. More specifically, Defendant has offered evidence that the adverse action resulted from Wofsy's refusal to comply with the requirements of the new Driver

---

[8] The parties disagree as to whether and/or to what extent Westminster Palms engaged in an interactive process to clarify Wofys's medical condition and restrictions. While Wofsy claims Westminster Palms never requested any additional medical information, neither Westminster Palms nor this Court have been provided with sufficient medical evidence to establish Wofsy was disabled under the ADA.

[9] The letter, on its face, stated Wofsy would remain on PRN status due to his refusal to accept the new full-time driver position as offered. While it references Wofsy's desire to accept the position with restrictions, it does not state such action was taken because he requested an accommodation.

position and/or provide sufficient medical documentation to support his accommodation request. The Eleventh Circuit has explained that "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000). The desire to utilize a new bus in a cost effective fashion could certainly have motivated a reasonable employer to impose new requirements on its drivers. Wofsy has failed to demonstrate that Westminster Palms' decision to do so was merely a pretext for discrimination.

    C.    **Conclusion.**

As the Eleventh Circuit stated in Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984), an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." See also, Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999)("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. We are not in the business of adjudging whether employment decisions are prudent or fair." (internal citations omitted)). Notwithstanding any prior arrangements or accommodations, Westminster Palms had the right to change the requirements of the Driver position and require its drivers to comply with those

requirements. Based on the evidence in the record, no reasonable juror could conclude that (i) Wofsy suffered from a disability as defined under the ADA, (ii) there was a causal link between Wofsy's accommodation request and the adverse action taken against him, or (iii) Defendant's creation of the new Driver position was a pretext for discrimination. Accordingly, the Court grants summary judgment against Plaintiff and in favor of Defendant as to all of Plaintiff's claims.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. 38) is **DENIED.**

2. Defendant's Motion for Summary Judgment (Dkt. 44) is **GRANTED**.

3. Plaintiff's Motion for Reconsideration (Dkt. 46) is **DENIED**.

4. Defendant's Motion and Memorandum to Strike (Dkt. 47) is **DENIED as moot.**

5. Plaintiff's Motion for Judgment as a Matter of Law (Dkt. 50) is **DENIED**.

6. The Clerk is directed to **STRIKE** Plaintiff's Motion to file a counter offer (Dkt. 51) from the record as improper.

7. All pending motions are denied as moot.

8. The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida on January 15, 2008.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2007\07-cv-98.msj defendant.frm